UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

THE DOW CHEMICAL COMPANY, and
DOW QUIMICA MEXICANA, S.A. DE C.V.

      Plaintiffs and Counter-Defendants,

                                        Case No. 04-10275-BC
v.                                       Honorable David M. Lawson

GENERAL ELECTRIC COMPANY,
GENERAL ELECTRIC CONSUMER &
INDUSTRIAL, and CONTROLADORA
MABE, S.A. DE C.V.,

      Defendants,

and

GENERAL ELECTRIC COMPANY, and
CONTROLADORA MABE, S.A. DE C.V.,

      Counter-Plaintiffs.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING
IN PART COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTERCLAIM**

      The plaintiffs and counter-defendants, Dow Chemical Company and its Mexican affiliate Dow Quimica Mexicana S.A. de C.V. (collectively Dow), produce polyurethane raw materials, which they supply to the defendants and counter-plaintiffs, General Electric Company, General Electric Consumer and Industrial, Controladora Mabe S.A. de C.V., a Mexican affiliate of General Electric (collectively GE). GE uses the raw polyurethane to make insulation and support foam for the refrigerators they manufacture. A dispute has arisen over the existence and terms of a contract to continue the supplier relationship. On October 7, 2004, Dow filed a complaint requesting that the Court declare that no enforceable agreement presently exists for the sale of certain polyurethane materials in 2004, 2005, and 2006.

GE responded to the complaint with an answer, statement of affirmative defenses, and counterclaim. The counterclaim, which has been amended once, seeks a declaration that an enforceable agreement exists between Dow and GE for the supply of raw polyurethane, alleges that Dow breached that agreement, asserts that GE is entitled to rebates under the terms of the agreement, and alleges that Dow committed fraud by delivering a different product than it represented.

Presently before the Court is Dow's motion to dismiss the first amended counterclaim pursuant to Federal Rule of Civil Procedure 12(b) on the ground that it does not state a basis for relief because GE's allegation of fraud is barred by the doctrine of economic loss, GE does not plead its averments of fraud with specificity as required by Rule 9(b), GE fails to state a claim for breach of contract, its alternative theories of unjust enrichment and promissory estoppel are barred because GE has claimed the existence of an express contract, and GE has changed its theory that certain emails establish a contract to one claiming the existence of an oral contract. GE has filed a response in opposition. The Court has reviewed the submissions and finds that the relevant law and facts have been set forth in the motion papers and that oral argument will not aid in the disposition of the motions. Accordingly, it is **ORDERED** that the motions be decided on the papers submitted. *See* E.D. Mich. LR 7.1(e)(2).

In an opinion and order entered August 5, 2005, the Court dismissed the unjust enrichment and promissory estoppel counts on summary judgment. The Court now finds that GE has pleaded its allegations of fraud with sufficient particularity as required by Federal Rule of Civil Procedure 9(b); however, the fraud claim is barred by the economic loss doctrine. GE will be allowed to proceed on the remainder of the amended counterclaim. The Court, therefore, will grant in part and deny in part Dow's motion to dismiss.

I.

The facts of this case are summarized in detail in the Court's previous opinion on summary judgment. *See Dow Chemical Co. v. General Elec. Co.*, 2005 WL 1862418, *2-*23 (E.D. Mich. 2005). With respect to the present motion, GE filed an amended counterclaim on leave granted on April 11, 2005. Count one seeks specific performance of a contract GE claims exists for the sale of certain polyurethane raw materials used in the manufacture of refrigerator insulation foam based on the exchange of emails and the parties course of performance. Count two requests a declaration that the above contract exists and that GE is due certain rebates under the terms of that contract. Counts three and four allege breach of contract, count three for anticipatory repudiation and count four for breach of an express contract. Counts five and six allege alternative theories of unjust enrichment and promissory estoppel. Count seven requests injunctive relief preventing Dow from terminating the present supply of polyurethane raw materials. Count eight alleges fraud asserting that Dow misrepresented the product GE was receiving.

In the decision on the parties' cross motions for summary judgment, the Court held that GE stated claims in Counts one, two, three, four, and seven that require resolution of factual disputes. As previously noted, Counts five and six have been dismissed. Count eight, therefore, is the focus of the present motion. It alleges that Dow knowingly represented to GE that the product supplied was a specialty, blended product, which Dow referred to as "XUS 15639." However, GE contends in its counterclaim that the polyol product in fact was an off-the-shelf chemical, or "commodity product," that Dow sold as Voranol 360. *See* Amended Counterclaim at ¶ 96. GE contends it was damaged by this misrepresentation as follows:

> GE reasonably relied on Dow's thorough efforts to misrepresent the nature of the
> products delivered to GE because, in part, GE believed it was receiving a specialty

> product not available to its competitors. Because of GE's reasonable reliance, GE suffered damages, including but not limited to, paying artificially inflated prices and converting its plants to the exclusive use of Dow products.

*Ibid.* GE proceeds in the counterclaim to outline in detail the conduct in which Dow engaged to conceal the fact that the polyol product it was receiving was not a custom blend. For instance, "[a]ccording to Dow, the 'XUS' prefix denominates an 'experimental' product" which "Dow . . . repeatedly and continuously represented to GE . . . was an experimental, blended product specially designed to meet GE's performance criteria." Amended Counterclaim at ¶¶ 97-8.

GE contends that Dow perpetuated the ruse through several conversations between Dow employees and GE foam engineers, written documents, invoices, and test data shared by Dow with GE. Amended Counterclaim at ¶¶ 99, 101-12. The misrepresentation harmed GE because "GE believed that using a blended product uniquely developed for GE in manufacturing refrigerators would give GE a competitive advantage." Amended Counterclaim at ¶ 100. Moreover, "GE relied on Dow's deception and misrepresentations by, among other things, purchasing XUS 15639 from Dow, paying a higher price than GE otherwise would have paid if GE had known XUS 15639 was just an off-the-shelf commodity product, purchasing both polyol and MDI from Dow when it could have unbundled the two products, qualifying Dow at its Bloomington facility, converting its Bloomington facility to Dow, and granting Dow a 100% supply position at five GE facilities." Amended Counterclaim at ¶ 121.

Dow contends in its motion to dismiss that GE's averments of fraud are not specific enough to satisfy the pleading requirement of Federal Rule of Civil Procedure 9(b). It also contends that the fraud claim is barred by the economic loss doctrine.

II.

Motions to dismiss are governed by Rule 12(b) of the Federal Rules of Civil Procedure and allow for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When deciding a motion under that Rule, "[t]he court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Cline v. Rogers*, 87 F.3d 176, 179 (6th Cir. 1996). "A judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations." *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Ibid*. "In practice, 'a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer Candy Shops*, Inc., 859 F.2d 434, 436 (6th Cir. 1988)). *See also Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir.) (per curiam) (mere conclusions are not afforded liberal Rule 12(b)(6) review), *cert. denied*, 484 U.S. 945 (1987). Where the plaintiff offers multiple factual scenarios for a particular claim, only one need be sufficient. *Briggs v. Ohio Elections Comm'n*, 61 F.3d 487, 494 (6th Cir. 1995).

A.

Under Federal Rule of Civil Procedure 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).

"The purpose of Rule 9(b) is to provide fair notice to the defendant so as to allow him to prepare an informed pleading responsive to the specific allegations of fraud." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n,* 176 F.3d 315, 322 (6th Cir. 1999) (citing *Michaels Bldg. Co. v. Ameritrust Co., N.A.,* 848 F.2d 674, 679 (6th Cir. 1988)). To satisfy the requirements of Rule 9(b), a party must "'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the [the other party]; and the injury resulting from the fraud.'" *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)); *see also Vild v. Visconsi*, 956 F.2d 560, 567 (6th Cir. 1992). A party's allegations must satisfy Rule 9(b)'s particularity requirement with regard to each element of the claim of fraud and with regard to each defendant against whom fraud is alleged. *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1114 (W.D. Mich. 1996).

Dow claims that paragraphs 96 through 123 of the amended counterclaim do not provide fundamental information about the time, nature, and place of the fraud GE alleges. Although GE has not specified specific months, the allegations are specific enough to put Dow on notice of its alleged wrongful conduct. The nature of the fraud is clear: Dow switched products and attempted to cover up the deception. The nature of the switch and cover-up are detailed in GE's pleading, referring to conversations by specific Dow and GE employees, describing specific documents, and providing a general time frame during which the events allegedly occurred. There are allegations that Dow promised GE a tailored product and not an off-the-shelf product when Dow's Les King spoke to GE's Beth Vance. Dow claims that this conversation occurred after the filing of the lawsuit. Nonetheless, a fair reading of GE's pleading allows the conclusion that it could have

happened before the filing of the lawsuit. Moreover, GE points to several emails that tend to show the nature and time frame of the fraud. As pleaded, GE's counterclaim satisfies Rule 9's specificity requirements.

B.

However, Dow argues that GE's fraud count asserts no more than a claim that GE did not get the product it thought it purchased, or alternatively it paid to much for what it got. Dow contends that when the only loss alleged is economic and the claim arises from a commercial transaction, Michigan law relegates the claimant to its contract remedies and bars the claim in tort. GE counters that Dow's deception skewed the negotiating process and prevented it from allocating risks, so the economic loss doctrine does not bar its tort claim.

The economic loss doctrine "is a judicially created doctrine that bars all tort remedies where the suit is between an aggrieved buyer and a nonperform[ing] seller . . . and the only losses alleged are economic." *Sullivan Indus., Inc. v. Double Seal Glass Co., Inc.*, 192 Mich. App. 333, 339, 480 N.W.2d 623, 627 (1991). Michigan courts have drawn a distinction in the application of the economic loss doctrine between fraud claims alleged to have induced a party to enter a contract, where the remedy sought presumably is the restoration of the innocent party to his former position, and those alleged to have occurred during the execution of the contract, where the wronged party seeks the benefit of his bargain. "With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort." *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc*., 209 Mich. App. 365, 372, 532 N.W.2d 541, 544-45 (1995). However, fraud in the inducement claims are not similarly barred. *Id*. at 372-73, 532 N.W.2d at 545 (observing that "[f]raud in the

inducement presents a special situation where parties to a contract appear to negotiate freely – which normally would constitute grounds for invoking the economic loss doctrine – but where in fact the ability of one party to negotiate fair terms and make an informed decision is undermined by the other party's fraudulent behavior").

The Sixth Circuit has noted that Michigan law draws a distinction between contract and tort remedies in such cases, stating that the purpose of "[t]ort law" is to ""protect [s] society's interest in freedom from harm."" *Detroit Edison Co. v. NABCO, Inc.*, 35 F.3d 236, 239 (6th Cir. 1994) (quoting *Neibarger v. Universal Cooperatives, Inc.*, 439 Mich. 512, 520, 486 N.W.2d 612, 615 (1992)). Contract law, however, is based on mutual promises that serve mutual self-interest where "parties of equivalent bargaining power negotiate the terms of the transaction and each is then entitled to the benefit of the bargain." *Ibid.*

> The distinction between tort and contract becomes problematic when, as in the present case, a commercial buyer seeks to recover *in tort* for damages caused by a defective product which was purchased in a commercial setting. In pursuing such recovery, the buyer asks for more than the benefit of the bargain; the buyer wants to be put back where he was before the product failed. In this situation, the economic loss doctrine defines the boundary between what a buyer in a commercial setting can and cannot seek to recover in tort.

*Ibid*.

Under Michigan law, recovery for damages caused by a failed, substandard, or defective product is limited by the remedies prescribed by the Uniform Commercial Code, that is, "the benefit of the bargain (the difference between the value of the goods as delivered and the value the goods would have had they complied with the warrant[ies]) as well as incidental and consequential damages in a proper case." *Neibarger,* 439 Mich. at 519-20, 486 N.W.2d at 615.

In this case, GE appears to argue that Dow's alleged fraud prevented GE from negotiating freely, and thereby attempts to parlay its fraud-in-the-execution claim into a fraud-in-the-inducement allegation. However, the Court believes that the allegations in the amended counterclaim cannot fairly be read that way. The gravamen of GE's claim is that Dow promised one product and delivered another. In *Huron Tool*, the Michigan Court of Appeals explained that claims of that nature are barred by the economic loss doctrine.

> The distinction between fraud in the inducement and other kinds of fraud is the same as the distinction drawn by a New Jersey federal district court between fraud extraneous to the contract and fraud interwoven with the breach of contract. *Public Service Enterprise Group, Inc. v. Philadelphia Elec. Co.*, 722 F. Supp. 184, 201 (D.N.J., 1989). With respect to the latter kind of fraud, the misrepresentations relate to the breaching party's performance of the contract and do not give rise to an independent cause of action in tort.

*Huron Tool*, 209 Mich. App. at 372, 532 N.W.2d at 544-45.

GE may pursue a claim against Dow for delivering a product that was not as represented, but such a claim must be based on a breach of contract theory. To the extent that GE intends its Count eight of the amended counterclaim to state a claim in tort based on fraud, that count must be dismissed because it is barred by the economic loss doctrine.

### III.

Although Count eight of the amended counterclaim is sufficiently specific to plead allegations of fraud under Rule 9(b), the economic loss doctrine bars GE's fraud claim. However, GE's claims for breach of contract, specific performance, declaration of rights, and injunctive relief are well pleaded and may proceed to trial.

Accordingly, it is **ORDERED** that Dow's motion to dismiss [dkt # 72] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Count eight of the amended counterclaim is **DISMISSED** with prejudice.

                                          s/David M. Lawson
                                          DAVID M. LAWSON
                                          United States District Judge

Dated: September 27, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 27, 2005.

                                  s/Tracy A. Jacobs
                                  TRACY A. JACOBS

---